UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: )
)
STOREHOUSE, INC. ) Case No. 06-11144-SSM
) Chapter 11
Debtor )

**MEMORANDUM OPINION AND ORDER
ON OBJECTION TO CLAIM NO. 4400866 OF JOHN TEYSSIER**

A hearing was held on October 18, 2010, on the objection of the debtor in possession to claim No. 4400866 filed by John Teyssier in the amount of $10,000, the largest portion of which represents money claimed due under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* ("WARN Act") .[1]  Mr. Teyssier, who filed a written response opposing the objection, was present in person and represented himself.  At the conclusion of the hearing, the court took the issues under advisement.  For the reasons stated, the court will sustain the objection to the WARN Act component of the claim, as well as to the claim for unused sick leave, leaving only the claim for unused vacation, to which the debtor in possession has not objected.

Background

Storehouse, Inc. ("the debtor") was a retailer of home furnishings and accessories.  It filed a voluntary petition in this court on September 18, 2006, for reorganization under chapter

---

[1] Mr. Teyssier's original claim was for $14,943.77, but was reduced to the maximum priority claim amount of $10,000 under § 507(a)(4).

1

11 of the Bankruptcy Code, and shortly thereafter conducted going-out-of-business sales and ceased operations. A plan has not yet been confirmed.

Mr. Teyssier was employed as a logistics manager by Storehouse starting in 2005. His job was to improve and maintain the quality of the delivery supply chain managed by Storehouse. This included both the home delivery aspect of Storehouse's business and oversight of the distribution warehouses that routed merchandise to Storehouse's retail outlets. Mr. Teyssier reported to the Vice-President of Logistics, Steve Augustine, whose office was at Storehouse corporate headquarters in Atlanta, Georgia.

Mr. Teyssier lived in Richmond when he was initially hired by Storehouse and did not want to move to Atlanta. He opted not to work from home because he felt he was more efficient when working in a professional environment. Instead, he was provided with office space in the back of a small Storehouse retail location in the Stony Point Fashion Park in Richmond, Virginia. The store employed under a dozen full-time people. Mr. Teyssier's decision to stay in Richmond and work out of the back office at Stony Point saved Storehouse the expense of moving him to Atlanta. Mr. Teyssier shared his office space in the back of the Richmond retail store with Anita Pugh, who was in charge of training and corporate culture.

Mr. Teyssier spent much of his time traveling to the distribution depots he oversaw. The distribution depots and "cross-docks" spanned from New Jersey to Florida to Texas. However, the cross-dock that required the most attention was in New Jersey. In addition to spending time at the distribution depots, he was usually called to the corporate headquarters in Atlanta every

few months for meetings. When he was in Atlanta and not in meetings, he would work out of a conference room.

When Mr. Teyssier was in his office in Richmond, the bulk of his work was administrative— he would answer e-mails, return phone calls, and touch base with district managers about any delivery problems they were having. Most of these phone calls were made through his corporate cell phone rather than the land line in the office, and the computer he used was the same laptop he traveled with rather than a desktop. Mr. Teyssier does not recall receiving any mail or FedEx or UPS deliveries at the Richmond office, but was fairly certain that if someone had sent him something, it would have been sent to Richmond. Mr. Teyssier testified that his employment with Storehouse ended in October of 2007.

## Discussion

### A.

Mr. Teyssier's original claim had three parts: (1) $8,9327.22 for a violation of the WARN Act; (2) $4,004.37 for unused vacation; and (3) $2,002.18 for unused sick leave. The total was reduced to $10,000, the maximum priority amount allowed under § 507(a)(4), Bankruptcy Code, at the time the case was filed.[2] The debtor objects to the WARN Act component of the claim because the debtor contends that Mr. Teyssier does not qualify for WARN Act protection because he did not work at a location that employed more than 50 full-time employees. Mr. Teyssier contends that his WARN Act claim is valid because he was a "corporate" employee and that for purposes of the WARN Act the location of his employment

---

[2] The statutory cap has since been increased to $10,950 for cases filed on or after April 1, 2007, and to $11,725 for cases filed on or after April 1, 2010.

should be treated as the corporate headquarters in Atlanta, which the debtor concedes employed more than 50 full-time employees. Because Storehouse employees were not entitled, under the company handbook, to payment for accumulated sick days upon separation from the company, the debtor also objects to the claim for unpaid sick time as not having been "earned" by Mr. Teyssier as required by § 507(a)(4). The objection to the unpaid sick time was accepted by Mr. Teyssier in his response to the debtor's objection. The debtor does not object to the claim for unused vacation time and asks that the total claim be reduced to the amount for unused vacation time—$4,004.37. Since the debtor and Mr. Teyssier agree with respect to the unused vacation and unused sick time, the only claim that needs to be resolved is the claim for WARN Act damages.

B.

The main purpose of the WARN Act is to warn employees of pending "major layoffs" and "plant closings" at least 60 days prior to the layoff or closing. 29 U.S.C. § 2102(a). A "plant closing" is a permanent or temporary shutdown resulting in the loss of employment of 50 or more full-time employees at a single site of employment or an operating unit within a single site of employment. 29 U.S.C. § 2101(a)(2). A "mass layoff" is a reduction in force that results in the loss of employment of 500 or more people, or results in the loss of at least 50 employees representing more than 33 percent of the full-time employees at a single employment site. 29 U.S.C. § 2101(a)(3). A "mass layoff" by statutory definition cannot be the result of a "plant closing." *Id*. Unfortunately, the phrase "single site of employment" is not defined by the

WARN Act, but the Fourth Circuit has already grappled with this problem in *Meson v. GATX Technology Services Corp.,* 507 F.3d 803 (4th Cir. 2007).

In *Meson*, Ms. Meson was a sales representative and regional manager who worked in a small office in Falls Church, Virginia, but her duties required significant travel. *Id*. at 804. In her role as a regional manager, she reported to someone located in the corporate headquarters in Florida. *Id*. For Ms. Meson to have a valid WARN Act claim, she needed to be employed at a site with over 50 full-time employees who were dismissed, but the Falls Church office she worked in had fewer than 50 employees total. Ms. Meson contended that based on the language of 20 C.F.R.§ 639.3(i)(6), she should be considered an employee of the corporate headquarters for purposes of the WARN Act rather than the small office in Falls Church. *Id*. at 809. The text of 20 C.F.R. § 639.3(i)(6) states:

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g. railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

Ms. Meson's contention was rejected by the Fourth Circuit, which concluded the language of the regulation was designed to cover "mobile workers"— workers without a regular, fixed place of work. *Meson*, 507 F.3d at 810. Ms. Meson was not considered a mobile worker because she worked out of a particular office and managed two employees there. *Id*. It was not enough that she reported to someone in the corporate headquarters in Florida and traveled frequently to visit clients throughout her assigned sales region. *Id*. The Court found that Ms. Meson was analogous to a "branch manager," and this cut against her being a mobile worker. The Fourth

5

Circuit also cited the relevance of whether the loss of employment is part of a layoff that has a significant community impact. *Id*. The Court explained how the WARN Act was designed to alert the community in addition to individual workers to the impending economic impact of a layoff, so that the community might better prepare. *Id*.

The debtor contends that Mr. Teyssier's WARN Act claim falls squarely under the precedent set in *Meson*. Mr. Teyssier contends that his situation is distinguishable from Ms. Meson's because he did not manage anyone at his Richmond office, his position was not analogous to that of a "branch manager," nor did any of the work he did relate to the store in which he had an office. Mr. Teyssier claims he was a mobile worker and that his home base should be the corporate headquarters in Atlanta because he received his work from there and his supervisor's office was located there. Mr. Teyssier also believes that his ability to work from home and be an "officeless" worker if he had wanted to militates toward finding him a mobile worker for purposes of the Act.

Although there are factual differences between Mr. Teyssier's case and Ms. Meson's case, it appears the Fourth Circuit's intention in *Meson* was to cover situations like that of Mr. Teyssier. As the Court noted:

> The Department of Labor regulations do not address the apparent inconsistency that arises in the case of an employee whose duties require travel, as described in *subpart (6)*, but who also has a fixed place of employment . . . . Faced with this discrepancy, we conclude, consistent with the courts which have construed *subpart (6)* in the most closely analogous contexts, that it does no apply to these facts.

*Meson*, 507 F.3d at 809. This means that Mr. Teyssier is not a "mobile worker," and that he therefore does have a single site of employment for purposes of the WARN Act. The question

6

then becomes where is his single site of employment?  Mr. Teyssier contends that because he did not do any work related to the Richmond store nor managed any employees there, it cannot be his single site of employment.  Mr. Teyssier analogized the office at the back of the Richmond store to the conference room he worked out of in Atlanta or the space he would work out of when he visited distributional centers.  He maintained that he used virtually no supplies or appointments of the office, as almost all of his work was done via his cell phone and laptop.  However, just because he could have worked in a number of different places, does not mean he did not have a single site of employment.  When he was not traveling for work, Mr. Teyssier consistently reported to his small office in the back of the retail store in Richmond.  This was his single site of employment, as it was where he went to work when not on the road.

Even if Mr. Teyssier had chosen to work from home, instead of using the back office in Richmond, he would still have had a single site of employment.  His residence in Richmond would have been his single site of employment, since it would have been his fixed workspace when he was not traveling for work.  Therefore, even treating Mr. Teyssier as a true telecommuter, he still worked at a single site of employment with fewer than 50 employees for purposes of the WARN Act.  The alternative to finding that a telecommuter's single site of employment is his or her home would be to find that the single site of employment is determined by where he or she receives work from and reports to.  Such an interpretation would not make sense within the broader outlines of the WARN Act.  As the Fourth Circuit stressed in *Meson*, a major objective of the Act is to warn communities in addition to individual workers of the impending economic disruption of a major layoff or plant closing.  *Meson*, 507 F.3d at 811.  The

Court further highlighted that Congress's decision to target only those layoffs affecting 50 or more people in a single locale is significant. *Id*. It supports the conclusion that 20 C.F.R. § 639.3(i)(6) does not apply when fewer than 50 community residents have lost their job as a result of a single layoff.[3] *Id*. In this case Mr. Teyssier was not a mobile worker and therefore he had a single site of employment. The layoff at his site of employment was fewer than 50 people and therefore he does not qualify for protection under the WARN Act.

O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. The objection is sustained, and Claim No. 4400866 filed by John Teyssier is allowed as a priority claim under § 507(a)(4), Bankruptcy Code, in the reduced amount of **$4,004.37**, and the balance of the claim is disallowed.

2. Mr. Teyssier is advised that an appeal lies from this order to the United States District Court for the Eastern District of Virginia. Except as provided in Rule 8002(b) and (c), Federal Rules of Bankruptcy Procedure, any notice of appeal must be filed with the clerk of this court within 14 days of the entry of this order on the docket. The filing fee for a notice of appeal is $255.00.

---

[3] This should not be interpreted as deciding whether related layoffs within one community can be aggregated for WARN Act purposes. Nor should this be considered an opinion on all situations involving telecommuters. For instance, this court considers it an open question as to whether or not the WARN Act would apply if a "virtual" call center of more than 50 employees were closed if the employees all worked from home and all lived in the same economic community. But Richmond, Virginia, and Atlanta, Georgia, are separated by some 500 miles and can hardly be said to comprise a single economic community.

      3. The clerk will mail a copy of this order, or give electronic notice of its entry, to the parties listed below.

Date: _____       _____
Alexandria, Virginia                        Stephen S. Mitchell
                                               United States Bankruptcy Judge

Copies to:

Dylan G. Trache, Esquire
Wiley Rein LLP
7925 Jones Branch Drive, Suite 6200
McLean, Virginia 22102
Counsel for Storehouse, Inc.

John Teyssier
7904 Blueberry Hill Court
Richmond, VA 23229
Creditor

Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, Virginia 22314